We're going to go on. We're going to go to Appeal 22-2110 and 22-3280, Jeannette Flowers v. Merrick Garland. Hello, Mr. Trace. Good morning, Your Honor. How are you? Okay. Judges, good morning. Good morning. May it please the Court, my name is David Trace. I represent the appellant in this case, Jeannette Flowers. This argument today is two consolidated petitions, so the issues could overlap a little bit. But essentially, what's occurred in this case is it's a case of cancellation of removal and the petitioner has six children and Unfortunately, five now. Yes. And at the time of the hearing, her father was also in a state of poor health. He was in a nursing home and he has since passed away. During the hearing before the immigration judge, very surprisingly and tellingly, there was no weighing of the harm shifts, which is a requirement of cancellation of removal. Well, she went right to the discretionary aspect. Well, she did. However, that should come second after first determining eligibility. Is there any requirement in the law to do that? Well Is there any requirement in the law to do it sequentially that way? Because even if you meet all of the requirements for cancellation under discretionary, you can still reject it. Yes, you could. But to exercise that discretion, you would first need to balance what has occurred here. The offense. Well, what do we do with INS versus Bagmas Bod? It's a Supreme Court case from 1976 that says the two-step process does not have to be followed sequentially. Just accept it. I'm sorry? We just have to accept that, I fear. Well, we also have here, you know, most recently in Wilkerson, they reaffirm it's a two-step process. And if we say, well, we can't weigh hardships, because of something that occurred 18 years ago, it just seems unfair. The hardship is almost always the key to a cancellation of removal case involving a non-permanent resident. So assume a court can go, or assume the immigration judge can go right to the discretionary factors, and take your argument from there, if you would, please. Well, if you go straight to the discretionary factors, what will occur then is it won't, it's kind of a dangerous road, because it's unfair. And that's why Congress laid out those four elements to be considered. We just can't have someone saying, well, my discretion is going to be this. What's your strongest argument, Mr. Trace, if it's okay to go right to the discretionary step and skip step one, and go right to the discretionary? What is your strongest argument for us to grant your petition? The strongest argument would be that it seems like it's a violation of due process. If Congress went to all the trouble of laying out the elements, and then saying, well, I don't have to consider any of this, I can just go to discretion. There's rules there, and the judge's discretion was based upon the use of a passport 18 years prior. But I think we're missing, we are an inferior court to the Supreme Court, and the Supreme Court has answered this question, that you don't have to do the steps sequentially, and if the judge sidesteps step one and goes right to step two, this is the Patel holding, that we still have to answer Judge Saineev's question. What is the best evidence that you have that the exercise of discretion was improper? That there wasn't any weighing or balancing of the hardships. What's the legal or constitutional error that occurred at the discretionary step? At this discretionary step, the legal error is that it wasn't weighed or applied. So look, is it your position that an immigration judge in exercising her discretion, which of course is step two, commits legal error whenever she does not expressly address  No, it's not that she just doesn't do that. This court said that there must be a balancing of the social and humane considerations. This was, I'm sorry, it's the BIA in matter of Coelho. There must be a balancing of social and humane considerations in the alien's favor against the adverse factors. The immigration judge here in her opinion. She discussed the hardships to the children and the abusive relationship and the other hardships. So I think we're all trying to understand. What she did, Your Honor, with due respect, it seems like what she did was she did a recitation of testimony and evidence. Are you arguing that it is legal error not to explicitly say what weight you're giving to each of those factors? Yes, I think if a weighing is required. And what supports your argument that that is legal error or something that is required of the immigration judge? It's legal error not to follow the procedures. Was the immigration judge's exercise of discretion challenged on appeal to the BIA? What was challenged to the BIA was that the hardships weren't weighed. So with that comes the exercise of discretion. So it was argued. If the procedures aren't followed, then it seems that why have the hearing? Why have the hearing if you're not going to go through all of the elements? Because the Supreme Court said you don't have to. The Supreme Court has answered this question and said you don't have to do step one. You can move directly to step two. If judges always move to step two without weighing the hardships, without going through all four of those elements that were laid out, it seems like it defeats the purpose that Congress had intended. This court has said that the immigration judge and the Board of Immigration Appeals needs to consider the entire record. And the failure to do so is a procedural error.  mention of the hard... Mentioning that a child has learning disabilities is not weighing it. There is all sorts of evidence also put in where school records... But your argument is really, truly centered this morning on eligibility. And so the second prong is in Patel, as the Supreme Court explained, after determining eligibility, if we accept that she was eligible for cancellation of removal, she would still have been required to persuade the immigration judge that she also merits a favorable exercise of discretion. That's the explanation in Patel. We are, as a court, as appellate court of review, we're asking as to what we're asked to answer is if we accept that she was eligible for cancellation of review, what's your best evidence that she... that the court, the immigration judge, in this case, I guess, failed to exercise... Go ahead, I'm sorry. That it was an abuse of discretion. Okay. She's considered... Which leads to a misweighing of the case, the hardships. It's an abuse of discretion if the judge is going to say,  to get back into the United States to be with your family and your children that wasn't yours 18 years ago. And since that time, you haven't had any problems. Is there no room for any rehabilitation? It's an abuse of discretion. And it's not fair. It's not fair to Ms. Flowers. It's not fair to her children. It's just... It's not fair. And it's not just. And there has to be the idea of what's fair and justice here. What's justice here? Is it justice that she be deported and removed from her children for something that occurred now almost 25 years ago? I think that's really the question. There was... And it has to be fixed. Thank you. Thank you, Mr. Dre. Come on up, Mr. Boncini. Please. Please, the Court, Your Honors. My name is Walter Bocchini for the Department of Justice and Respondent Attorney General. I understand Petitioner's argument to be more of a due process argument. Of course, this Court has held that there is no liberty interest in discretionary relief, which cancellation and removal is. So this is not a tolerable claim that he can put forth in light of the discretionary review bar at 1252A2B. And that is even more so on the government's point, as the government's point now, following Wilkinson, where the Court has made it clear that there is no jurisdiction to review that Step 2 discretionary determination. This is a very tragic case. This is a very tragic case. If an individual's circumstances change in a way that might affect the exercise of discretion, how is that individual supposed to raise the new information so that the exercise of discretion can be reexamined, or can new information never be reexamined under these circumstances? It certainly can. It can be raised in a motion to reopen, as the Petitioner did raise, well, he filed a motion to reopen with the Board, where she presented more evidence of hardship to her daughter now. But they didn't make the argument that this should have been weighed on the discretionary determination. That seems kind of harsh, doesn't it? She presented the new evidence. The immigration judge made the determination on a discretionary matter. It seems kind of harsh that the Board didn't consider it on that basis. That is a requirement of this Court that the Petitioner does have to exhaust that argument, and that the BIA is entitled to rely on the arguments presented to parse out what exactly is being raised. The hardship issue, the additional hardship issue, could potentially apply to both issues, to both the prerequisites, statutory prerequisite for cancellation, as well as to the ultimate discretionary determination. But the Board knew that wasn't the basis of the immigration judge's ruling. Well, Your Honor, the motion to reopen also had an additional adjustment of status claim. So maybe the Board was more focused on that one, and since he didn't raise the issue, didn't address it, it has to be remembered that the agency decisions here are written for the parties, primarily for the parties. And since the Petitioner not only didn't raise it, but effectively almost directed the Board in a completely different direction. So here there really wouldn't be any reason for the Board to then reassess it when it was pretty clear from the proceedings, the original proceedings below, that the immigration judge, seconded by the Board, they were really heavily influenced by the, it wasn't just using a passport to come into the United States, it was procuring a passport under a false name, going through all that process entails, and then repeatedly using it to enter the United States. So the agency decisions telegraphed. First off, there was evidence that she was an abused wife, whatever their relationship was, and that he forced her to do this in order to, has he been deported by the way? I believe he's still incarcerated. Oh, okay. Yes. I mean, oh, the facts of this case are just so sad. I understand, Your Honor, and we of course... Is there, your view is that there is absolutely nothing that can be done. Well, Your Honor, it remains an avenue for a petitioner to reach out to the Department of Homeland Security and request prosecutorial, some form of prosecutorial discretion. Of course, I'm going to point out that adjustment of status is not going to be on the table here because the false claim of United States citizenship, that's going to permanently bar her from getting a green card. And that would affect that I-130 petition? It doesn't affect the I-130 petition because those are separate proceedings before USCIS, but then to use that petition to then apply for the LPR status, she cannot because she has this non-waivable ground of inadmissibility. So, are you saying that she can never come back or she can't come back for the normal 10 years? No, Your Honor. She's inadmissible to this country. I believe there, and I could be mistaken here, but I believe there is a limited inadmissibility waiver for non-immigrant visas. I think it's usually used for people who are coming to the United States. For example, Fidel Castro, when he came to the United States, needed a non-immigrant visa. But effectively, Your Honor, no. I think that she's going to be permanently barred on that. But of course, the Department of Homeland Security can exercise prosecutorial discretion in other forms. For example, they may agree to not remove the petitioner for a certain amount of time or they may agree to maybe perhaps even reopen proceedings, but I don't see how that would help her. But that is going to be incumbent on the petitioner to make the request to the Department of Homeland Security. The Department of Justice doesn't get involved in those considerations. There is a process in place. What is necessary for a disqualifier to prove up a disqualifier? I'm sorry, Your Honor. I don't fully understand. So, we have the passport fraud. We have the false claim of citizenship. What level, I guess, would the government have to prove up to be able to establish that she disqualifies for those reasons? Well, the false claim of citizenship bar is quite broad. It does have to be for a benefit. I think that is the limiting factor for that. But here, I don't think it can be argued that obtaining a passport is not for a benefit. So, she made the claim under a false name. Obtained the passport and then repeatedly used it. And, Your Honor, I'm going to point out again, on Wilkinson, the court pointed out that the discretionary determination, as the court termed it, is not perfunctory because there are only 4,000 available slots per year. So, even though this case presents some facts that are difficult, at the same time, she does not fall, according to the agency's discretionary call, within those 4,000 slot number. And I think that, obviously the court doesn't have jurisdiction to review it, but it is a reasonable reason to deny the discretion, which will be available to other non-citizens in other cases. So, there has to be some sort of balancing. Even when everybody is deserving, not everybody can get it. It's simply not going to be possible. But, at the end of the day, the court doesn't have jurisdiction to review that discretionary call per Wilkinson and the whole line of cases that preceded that. I'll just point out really quickly, Your Honor, that in the opening brief, the petitioner raised the argument that the agency didn't consider the abuse, and Your Honor pointed out that wasn't evidence. That was considered explicitly by the BIA. And also, I would say, it was considered by the immigration judge as well. It wasn't in the analysis session, but it was. It was in the facts section of the opinion. That's right, Your Honor. But, yeah. You know, so her I-130 has been approved. Right, the I-130... But the approval is just kind of a worthless piece of paper now. Right. The USCIS doesn't delve, when they are looking at the I-130, they're just looking at the relationship because it is the petitioner, the United States citizen petitioner, in his case, the son, that petitioned, and so USCIS is going to approve that. But then to use that to then obtain a green card, that's going to be the problem for the petitioner in this case. Oh, my. Mr. Boccini. Well, Your Honor, again, I would say that the petitioner should approach the Department of Homeland Security to the extent and see what may be possible in this case. And if there are no further questions, Your Honor, I will submit on. Thank you very much. Thank you, Your Honor. You certainly are a very fine representative of the Department under these circumstances. Mr. Trace, you have at least a little bit of an answer, don't you? A little bit of one, yes. You know, in the motion to reopen, when the petitioner presented additional hardship, this was the second child, and so it was new. It was new, and it wasn't, again, it wasn't considered. But you didn't argue that it should be considered for the discretionary reasoning. I think discretion is going to be implied. But you have to make a specific argument for exhaustion purposes that the disability of her child should be considered in determining whether or not she merited a discretionary cancellation. It's the second child. And again, if you go back to the statute, why wouldn't it be something that the BIA would talk about? And what the BIA has done is they give one sentence. This is discretionary, so no. And I think, too, when we talk about the use of the passport, it was one time. The second time she crossed the United States was she was scared, and they asked her, are you a citizen? She just nodded. So it was one time. And she does have the approved I-130. Whether that renders her inadmissible should really be something for USCIS to say. It might, and if it does, then it can be appealed not to the Board of Immigration Appeals. So why don't we let them say it rather than the BIA saying, oh, she might be inadmissible. So therefore, we're not going to consider this I-130. And besides that, we don't have a receipt, although we have the application and everything else. Again, it's not fair. Let USCIS say, you're inadmissible. You can appeal now. As for I appreciate counsels, we had talked about it briefly before, he and I, about prosecutorial discretion, and we may have to go down that road, but again, it's prosecutorial discretion. They certainly weren't offering that during the hearing, and they certainly weren't offering any stipulations as to any of the elements. So whether that occurs, maybe it will now because it's a little bit of a different climate than it was years ago. Maybe it will, but then the answer was no. Stipulations to anything, any of the four elements, no. And so again, we're just seeking some justice here for Mrs. Flowers. Thank you. Thank you both. Thank you, Mr. Buccini, and thank you, Mr. Tracz. Case will be taken under advisement.